## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PHILIP GURIAN, | ) |
| | ) |
|         Plaintiff, | )  Case No. _____ |
| | ) |
|         v. | )  JURY TRIAL DEMANDED |
| | ) |
| THE MEET GROUP, INC., SPENCER RHODES, | ) |
| GEOFFREY COOK, JEAN CLIFTON, | ) |
| CHRISTOPHER FRALIC, KEITH RICHMAN, | ) |
| BEDI SINGH, and JASON WHITT, | ) |
| | ) |
|         Defendants. | ) |
| | ) |

## COMPLAINT

Plaintiff, Philip Gurian ("Plaintiff") by his undersigned attorneys, for this Complaint against Defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel, as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1.      This is an action brought by Plaintiff against The Meet Group, Inc. ("Meet Group" or the "Company")  and the members of the Company's board of directors (collectively referred to as the "Board" or the "Individual Defendants" and, together with Meet Group, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a) respectively, and United States Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9.  Plaintiff also asserts a claim against the Individual Defendants for breaching their fiduciary duty of candor/disclosure under state law. Plaintiff's claims arise in connection with the proposed acquisition of Meet Group by eHarmony Holding, Inc.

("Buyer") through Buyer's wholly-owned subsidiary, Holly Merger Sub, Inc. ("Merger Sub") (the "Proposed Transaction").

2.      On March 5, 2020, Meet Group entered into an agreement and plan of merger (the "Merger Agreement"), pursuant to which Merger Sub will be merged with and into the Company, with the Company surviving as a direct, wholly-owned subsidiary of Buyer (the "Merger").

3.      Upon consummation of the Merger, Meet Group shareholders will be entitled to receive $6.30 in cash per share for each share of Meet Group common stock they hold (the "Merger Consideration").

4.      On April 2, 2020, in order to convince Meet Group's public common shareholders to vote in favor of the Proposed Transaction, the Defendants authorized the filing of a materially incomplete and misleading Preliminary Proxy Statement (the "Proxy") with the SEC, in violation of Sections 14(a) and 20(a) of the Exchange Act.

5.      In particular, the Proxy contains materially incomplete and misleading information concerning: (i) the financial projections for Meet Group; (ii) the valuation analyses performed by Meet Group's financial advisor, BofA Securities, Inc. ("BofA Securities"), regarding the Proposed Transaction; and (iii) the confidentiality agreement Meet Group entered into with Company B.

6.      The Proposed Transaction is expected to close in the second half of 2020, so the special meeting of Meet Group's shareholders to vote on the Proposed Transaction is imminent (the "Shareholder Vote").  Therefore, it is imperative that the material information that has been omitted from the Proxy is disclosed prior to the Shareholder Vote, so Plaintiff can properly exercise his corporate voting rights.

7.      For these reasons, and as set forth in detail herein, Plaintiff asserts claims against Defendants for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9, and breach

of the duty of candor/disclosure. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Meet Group's public common shareholders sufficiently in advance of the upcoming Shareholder Vote or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act and breach of the duty of candor/disclosure.

## **JURISDICTION AND VENUE**

8.    This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

9.    The Court has supplemental jurisdiction over the state law claim for breach of the duty of candor/disclosure pursuant to 28 U.S.C. § 1367.

10.    Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over each Defendant by this Court permissible under the traditional notions of fair play and substantial justice. "Where a federal statute such as Section 27 of the [Exchange] Act confers nationwide service of process, the question becomes whether the party has sufficient contacts with the United States, not any particular state." *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1315 (9th Cir. 1985). "[S]o long as a defendant has minimum contacts with the United States, Section 27 of the Act confers personal jurisdiction over the defendant in any federal district court." *Id.* at 1316.

11.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as 28 U.S.C. § 1391 because Defendants are found or are inhabitants or transact business in this District.  Indeed, Meet Group's common stock trades on the Nasdaq Global Select Market ("NasdaqGS"), which is also headquartered in this District.  *See, e.g., United States v. Svoboda*, 347 F.3d 471, 484 n.13 (2d Cir. 2003) (collecting cases).  Further, the Company's proxy solicitor, Okapi Partners LLC is located in this District at 1212 Avenue of the Americas, New York, NY 10036.

## **PARTIES**

12.     Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Meet Group common stock.

13.     Defendant Meet Group is a public company incorporated under the laws of Delaware with principal executive offices located at 100 Union Square Drive, New Hope, PA.  Meet Group's common stock is traded on the NasdaqGS under the ticker symbol "MEET."

14.     Defendant Spencer Rhodes is, and has been at all relevant times, a director of the Company and Chairman of the Board.

15.     Defendant Geoffrey Cook is, and has been at all relevant times, a director of the Company and Chief Executive Officer.

16.     Defendant Jean Clifton is, and has been at all relevant times, a director of the Company.

17.     Defendant Christopher Fralic is, and has been at all relevant times, a director of the Company.

18.     Defendant Keith Richman is, and has been at all relevant times, a director of the Company.

19.     Defendant Bedi Singh is, and has been at all relevant times, a director of the Company.

20.     Defendant Jason Whitt is, and has been at all relevant times, a director of the Company.

21.     The Defendants identified in paragraphs 14 through 20 are collectively referred to herein as the "Board" or the "Individual Defendants," and together with Meet Group, the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**Background of the Company and the Proposed Transaction**

22.     Meet Group is a portfolio of mobile social entertainment apps designed to meet the universal need for human connection. The Company leverages a live-streaming video platform, empowering the global community to forge meaningful connections. The Company's primary apps include, MeetMe, LOVOO, Skout, and Tagged.

23.     On March 5, 2020, the Board caused the Company to enter into the Merger Agreement with Buyer, whereby Meet Group shareholders will be entitled to receive $6.30 in cash per share for each share of Meet Group common stock they own.

24.     According to the March 5, 2020, press release announcing the Proposed Transaction:

### The Meet Group Announces Definitive Agreement to be Acquired by ProSiebenSat.1 and General Atlantic

NEW HOPE, Pa.— March 5, 2020 — The Meet Group, Inc. (NASDAQ: MEET), a leading portfolio of mobile dating apps, today announced that it has entered into a definitive agreement to be acquired by ProSiebenSat.1`s and General Atlantic's joint company NuCom Group in an all cash transaction for $6.30 per fully diluted share representing an enterprise value of approximately $500 million. Together with NuCom Group's portfolio company Parship Group, a matchmaking platform with its brands Parship, Elite Partner and eharmony, The Meet Group will become an integral part of a global leader in the online dating and social entertainment sector.

After careful and thorough review, and following consultation with The Meet Group's financial and legal advisors, the transaction was unanimously approved by The Meet Group's board of directors. The purchase price represents a 30% and 43% premium to the unaffected 30 and 60 trading day volume weighted average price, respectively, to The Meet Group's common stock through December 13, 2019, the last trading day prior to published market speculation regarding a potential transaction involving the company.

"The Meet Group Board of Directors undertook a robust process, which culminated in a transaction that we believe will deliver certain and immediate value to our shareholders," said Spencer Rhodes, Chairman of The Meet Group Board of Directors. "We are excited about this transaction and the significant benefits resulting from a combination with Parship Group," said Geoff Cook, Chief Executive Officer of The Meet Group. "This transaction will allow us to tap new strategic growth opportunities by leveraging our video platform and ProSiebenSat.1's experience with content and entertainment. What's more, with this transaction and the participation of both General Atlantic and ProSiebenSat.1, we will achieve a new level of financial scale and backing, which has the potential to further accelerate our growth."

The Meet Group's freemium dating brands, featuring its industry-leading video platform technology, will be combined with NuCom's portfolio company Parship Group, which operates premium subscription dating brands including eharmony, Parship and Elite Partner. The transaction will diversify the revenue streams of both companies and increase their combined international footprint by broadening the companies' user base.

 (Emphasis in original).

**The Proxy Omits Material Information**

25.     On April 2, 2020, Defendants filed a materially incomplete and misleading Proxy with the SEC.  The Proposed Transaction is expected to close in the second half of 2020, so the Shareholder Vote is imminent.  The Individual Defendants were obligated to carefully review the Proxy before it was filed with the SEC and disseminated to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy misrepresents or omits material information that is necessary for the Company's shareholders to make an informed voting decision in connection with the Proposed Transaction.

26.     First, the Proxy discloses the line items used to calculate Adjusted EBITDA by stating that it is defined as net income (or loss) before interest expense, benefit from or provision for income taxes, depreciation and amortization expense, stock-based compensation expense, non-recurring acquisition, restructuring or other expenses. However, the Proxy, discriminatorily discloses only a few of the aforementioned line items used to calculate Adjusted EBITDA and fails to disclose a) interest expense, b) stock-based compensation expense, c) non-recurring acquisition, and d) restructuring or other expenses.

27.     Defendants' failure to disclose all line items used to calculate Meet Group's Adjusted EBITDA renders the Proxy materially misleading. Proxy, 48.

28.     If a Proxy discloses financial projections and valuation information, such projections must be complete and accurate.  The question here is not the duty to speak, but liability for not having spoken enough.  Regarding future events, uncertain figures, and other so-called soft information, a company may choose silence or speech elaborated by the factual basis as then known—but it may not choose half-truths.  *See Campbell v. Transgenomic, et al.*, No. 18-2198 (8th Cir., March 1, 2019) (noting that "half-truths" are actionable misrepresentations under securities laws and collecting cases).  Accordingly, Defendants have disclosed some of the information related to the Company's projections relied upon by BofA Securities but have omitted crucial line items and reconciliations.  Thus, Defendants' omissions render the projections disclosed on page 48 of the Proxy misleading.

29.     Second, the Proxy omits material information regarding the financial analyses conducted by BofA Securities.

30.     With respect to BofA Securities' *Selected Publicly Traded Companies Analysis*, the Proxy fails to disclose the individual multiples observed for each of the selected companies. *Id.* at 42-43.

31.     As for BofA Securities' *Selected Precedent Transactions Analysis*, the Proxy omits the individual multiples observed for each of the 17 transactions selected. *Id.* at 43-44.

32.     With respect to BofA Securities' *Discounted Cash Flow Analysis*, the Proxy is materially misleading and incomplete because it fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the terminals multiples of 8.0x to 10.0x; (iii) the inputs and assumptions underlying the perpetuity growth rates of 1.9% to 5.3%; (iv) the inputs

and assumptions underlying the discount rates ranging from 7.50% to 10.00%; and (v) the inputs and assumptions underlying the assumed effective tax rate of 21.0% and discount rates ranging from 7.00% to 9.00% used to calculate the implied per share present value of the tax benefits estimated to result from the NOLs. *Id.* at 44.

33.     These key inputs are material to Meet Group's shareholders, and there omission renders the summary of BofA Securities' *Discounted Cash Flow Analysis* incomplete and misleading.  As one highly-respected law professor explained regarding these crucial inputs, in a discounted cash flow analysis a banker takes management's forecasts, and then makes several key choices "each of which can significantly affect the final valuation."  Steven M. Davidoff, Fairness Opinions, 55 Am. U.L. Rev. 1557, 1576 (2006).  Such choices include "the appropriate discount rate, and the terminal value…"  *Id.*  As Professor Davidoff explains:

> There is substantial leeway to determine each of these, and any change can markedly affect the discounted cash flow value.  For example, a change in the discount rate by one percent on a stream of cash flows in the billions of dollars can change the discounted cash flow value by tens if not hundreds of millions of dollars….This issue arises not only with a discounted cash flow analysis, but with each of the other valuation techniques.  *This dazzling variability makes it difficult to rely, compare, or analyze the valuations underlying a fairness opinion **unless full disclosure is made of the various inputs in the valuation process, the weight assigned for each, and the rationale underlying these choices**.*  The substantial discretion and lack of guidelines and standards also makes the process vulnerable to manipulation to arrive at the "right" answer for fairness.  This raises a further dilemma in light of the conflicted nature of the investment banks who often provide these opinions.

*Id.* at 1577-78 (emphasis added).  Without the above-mentioned information, the Company's shareholders cannot evaluate for themselves the reliability of BofA Securities' *Discounted Cash Flow Analysis*, make a meaningful determination of whether the implied equity value ranges reflect the true value of Meet Group or was the result of an unreasonable judgment by BofA Securities, and make an informed decision regarding whether to vote in favor of the Proposed Transaction.

34.     Third, the Proxy omits crucial background information regarding the confidentiality agreement Meet Group entered into with Company B's private equity sponsor. Proxy, 31.

35.     The Proxy discloses that the Company executed a confidentiality agreement with Company B's private equity sponsor, but the Proxy does not specify whether the confidentiality agreement contained a customary standstill provision. *Id.* If the confidentiality agreement did contain a standstill provision, then the Proxy also failed to disclose the material information concerning whether the confidentiality agreement contained a "don't ask, don't waive" ("DADW") provision, and whether that DADW provision remains in effect or has fallen away. This information is material to shareholders because if the DADW provision remains in effect, then the potential strategic partner would effectively be estopped from making a superior bid. Any reasonable person would deem the fact that some of the likely topping bidders in the marketplace may be precluded from making a superior offer as significantly altering the total mix of information made available to shareholders. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 131 (2d Cir. 1999).

36.     Defendants' failure to provide the foregoing material information renders the statements in the Proxy false and/or materially misleading.

37.     In sum, the omission of the above-referenced information renders the Proxy materially incomplete and misleading, in contravention of the Exchange Act and the Individual Defendants' duty of candor/disclosure. Absent disclosure of the foregoing material information prior to the upcoming Shareholder Vote concerning the Proposed Transaction, Plaintiff will be unable to make an informed decision regarding whether to vote his shares in favor of the Proposed Transaction, and is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

//

//

## **CAUSES OF ACTION**

### **COUNT I**

**(Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9)**

38.       Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

39.       Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

40.       Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

41.       The omission of information from a proxy will violate Section 14(a) and Rule 14a-9 if other SEC regulations specifically require disclosure of the omitted information.

42.       Defendants have issued the Proxy with the intention of soliciting the Company's common shareholders' support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the Proxy, which fails to provide critical information regarding, amongst other things: (i) the financial projections for the Company; (ii) the valuation

analyses performed by BofA Securities in support of its fairness opinion; and (iii) the confidentiality agreement entered into by Meet Group.

43.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy, but nonetheless failed to obtain and disclose such information to the Company's shareholders although they could have done so without extraordinary effort.

44.     The Individual Defendants knew or were negligent in not knowing that the Proxy is materially misleading and omits material facts that are necessary to render it not misleading.  The Individual Defendants undoubtedly reviewed and relied upon most if not all of the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the Proxy states that BofA Securities reviewed and discussed its financial analyses with the Board, and further states that the Board considered the financial analyses provided by BofA Securities, as well as its fairness opinion and the assumptions made and matters considered in connection therewith.  Further, the Individual Defendants were privy to and had knowledge of the projections for the Company and the details surrounding the process leading up to the signing of the Merger Agreement.  The Individual Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Proxy, rendering the sections of the Proxy identified above to be materially incomplete and misleading.  Indeed, the Individual Defendants were required to, separately, review BofA Securities' analyses in connection with their receipt of the fairness opinions, question BofA Securities as to its derivation of fairness,

and be particularly attentive to the procedures followed in preparing the Proxy and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

45.     The Individual Defendants were, at the very least, negligent in preparing and reviewing the Proxy.   The preparation of a proxy statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.   The Individual Defendants were negligent in choosing to omit material information from the Proxy or failing to notice the material omissions in the Proxy upon reviewing it, which they were required to do carefully as the Company's directors.   Indeed, the Individual Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and preparation and review of the Company's financial projections.

46.     Meet Group is also deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Proxy.

47.     The misrepresentations and omissions in the Proxy are material and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote.   Plaintiff has no adequate remedy at law.   Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**(Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)**

48.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

49.     The Individual Defendants acted as controlling persons of the Company within the meaning of Section 20(a) of the Exchange Act as alleged herein.   By virtue of their positions as

officers and/or directors of Meet Group, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

50.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

51.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Proxy contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

52.     In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

53.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

54.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

55.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

### COUNT III

**(Against the Individual Defendants for Breach of Their Fiduciary Duty of Candor/Disclosure)**

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.     By virtue of their role as directors and/or officers of the Company, the Individual Defendants directly owed Plaintiff and all Company shareholders a fiduciary duty of candor/disclosure, which required them to disclose fully and fairly all material information within their control when they seek shareholder action, and to ensure that the Proxy did not omit any material information or contain any materially misleading statements.

58.     As alleged herein, the Individual Defendants breached their duty of candor/disclosure by approving or causing the materially deficient Proxy to be disseminated to Plaintiff and the Company's other public shareholders.

59.     The misrepresentations and omissions in the Proxy are material, and Plaintiff will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the Shareholder Vote. Where a shareholder has been denied one of the most critical rights he or she possesses—the right to a fully informed vote—the harm suffered is an individual and

irreparable harm.

60.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily enjoining Defendants and all persons acting in concert with them from proceeding with the Shareholder Vote or consummating the Proposed Transaction, unless and until the Company discloses the material information discussed above which has been omitted from the Proxy;

B.     Directing the Defendants to account to Plaintiff for all damages sustained as a result of their wrongdoing;

C.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

D.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: April 6, 2020                    **MONTEVERDE & ASSOCIATES PC**

By:   _/s/ Juan E. Monteverde_____
                    Juan E. Monteverde (JM-8169)
                    The Empire State Building
                    350 Fifth Avenue, Suite 4405
                    New York, NY 10118
                    Tel:(212) 971-1341
                    Fax:(212) 202-7880
                    Email: jmonteverde@monteverdelaw.com

                    *Attorneys for Plaintiff*